142 P.3d 921 (2006)
2005-NMCA-107
STATE of New Mexico, Plaintiff-Appellee,
v.
Felipe PADILLA, Defendant-Appellant.
No. 25,380.
Court of Appeals of New Mexico.
June 8, 2006.
Certiorari Granted August 31, 2006.
*924 Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.
John Bigelow, Chief Public Defender, Catherine A. Begaye, Assistant Appellant Defender, Santa Fe, NM, for Appellant.
Certiorari Granted, No. 29,947, August 31, 2006.

OPINION
FRY, Judge.
{1} Defendant Felipe Padilla challenges his conviction for aggravated fleeing a law enforcement officer (aggravated fleeing) under NMSA 1978, § 30-22-1.1 (2003). He claims that the trial court committed error by failing to instruct the jury on an essential element of the crime when it refused to allow the jury to consider whether the pursuit was conducted "in accordance with" the Law Enforcement Safe Pursuit Act (the Act). NMSA 1978, § 29-20-1 to -4 (2003). We agree and remand for a new trial. Further, Defendant argues that he may not be convicted for both (1) resisting, evading, or obstructing an officer (resisting/evading) and (2) aggravated fleeing because this would result in a double jeopardy violation due to the imposition of multiple punishments for the same offense. We agree with Defendant that resisting/evading is a lesser included offense of aggravated fleeing and that conviction for both crimes for unitary conduct would violate principles of double jeopardy.

BACKGROUND
{2} This case involves a high speed chase that began when police attempted to stop Defendant for a vehicle registration violation. We provide context for the facts by first reviewing two laws relating to police pursuits, which were recently enacted, apparently in response to the debate in recent years regarding the risks posed to both the police and the public by high speed police pursuits. See Patrick T. O'Connor & William L. Norse, Jr., Police Pursuits: A Comprehensive Look at the Broad Spectrum of Police Pursuit Liability and Law, 57 Mercer L.Rev. 511, 511-12 (2006) (describing the "social conundrum" presented by such pursuits and noting the particular concern over whether such pursuits are justified for minor traffic violations); see also State v. Landgraf, 1996-NMCA-024, ¶ 4, 121 N.M. 445, 913 P.2d 252 (describing a high speed pursuit that resulted in the deaths of three bystander children). In 2003 our legislature took action on this issue by imposing requirements governing police initiation and conduct of high speed pursuits and by creating the new felony crime of aggravated fleeing. The pursuit training and policy provisions applicable to police are contained in the Act and were codified at Section 29-20-1 to -4. The crime of aggravated fleeing was incorporated into the criminal code as Section 30-22-1.1, appearing immediately after the existing statute for resisting/evading. Both of these new statutes are central to the issues raised in this appeal.
{3} Historically, fleeing from the police either in a car or on foot would, at minimum, constitute the crime of resisting/evading, which is a misdemeanor. NMSA 1978, § 30-22-1 (1981); see, e.g., State v. Gutierrez, 2005-NMCA-093, ¶¶ 20, 21, 138 N.M. 147, 117 P.3d 953 (affirming a conviction for evading an officer where the defendant refused to obey a command to stop and jumped over a fence), cert. granted, 2005-NMCERT-007, 138 N.M. 146, 117 P.3d 952. Resisting/evading has a subsection specifically targeting the refusal to stop one's car after police have "given a visual or audible signal to stop." § 30-22-1(C). The new crime of aggravated fleeing, which is a fourth degree felony, specifically addresses fleeing from the police in one's car in a manner that endangers others, by stating:
A. Aggravated fleeing a law enforcement officer consists of a person willfully and carelessly driving his vehicle in a manner that endangers the life of another person after being given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or *925 other signal, by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle in pursuit in accordance with the provisions of the Law Enforcement Safe Pursuit Act.

§ 30-22-1.1(A) (emphasis added). Defendant claims that the italicized portion incorporates provisions of the Act and constitutes an essential element of aggravated fleeing.
{4} The Act defines a high speed pursuit as "an attempt by a law enforcement officer in an authorized emergency vehicle to apprehend an occupant of a motor vehicle, the driver of which is actively attempting to avoid apprehension by exceeding the speed limit." § 29-20-2. The Act mandates that police undergo training specific to high speed pursuits both at the academy and through ongoing in-service training. § 29-20-3. The Act contains a section entitled "Pursuit policies," § 29-20-4, which requires that each local police department "shall establish" a written policy for high speed pursuits and defines certain subjects that these policies shall address, such as "the conditions under which a law enforcement officer may" initiate and terminate a high speed pursuit. § 29-20-4(B)(1). The next subsection sets out specific rules for high speed pursuits, stating that each local pursuit policy "shall, at a minimum, require that:"
(1) a law enforcement officer may initiate a high speed pursuit to apprehend a suspect who the officer has reasonable grounds to believe poses a clear and immediate threat of death or serious injury to others or who the officer has probable cause to believe poses a clear and immediate threat to the safety of others that is ongoing and that existed prior to the high speed pursuit;
(2) a law enforcement officer shall not initiate or continue a high speed pursuit when the immediate danger to the officer and the public created by the high speed pursuit exceeds the immediate danger to the public if the occupants of the motor vehicle being pursued remain at large;
(3) when deciding whether to initiate or continue a high speed pursuit, the following factors, at a minimum, shall be taken into consideration:
(a) the seriousness of the offense for which the high speed pursuit was initiated;
(b) whether a suspect poses a clear and immediate threat of death or serious injury to others;
(c) road, weather, environmental and vehicle conditions;
(d) the amount of motor vehicle and pedestrian traffic; and
(e) knowledge of the suspect's identity, possible destination and previous activities that may make apprehension at a later time feasible; and
(4) no more than two law enforcement vehicles shall become actively involved in a high speed pursuit, unless specifically authorized by a supervisor.
§ 29-20-4(C). Defendant claims that because the Act requires each local police department's pursuit policy to contain these rules and because the aggravated fleeing statute requires the police officer to be "in pursuit in accordance with the provisions of the [Act]," compliance with these requirements is an element of the offense of aggravated fleeing. § 30-22-1.1(A).
{5} Against this statutory backdrop, we summarize the events leading to Defendant's convictions for both aggravated fleeing and resisting/evading. In October 2003 at 2 a.m., after the two new laws had gone into effect, a Portales police officer observed Defendant driving a Buick. The officer saw the car turn down an alley and stop, but no one got out of the car. This situation struck the officer as odd, so he called in the license plate; the registration came back as belonging to a Ford, not a Buick. Because of this apparent vehicle registration violation, the officer attempted to stop Defendant by activating his emergency overhead lights. Defendant accelerated his car and ran a stop sign, at which point the officer turned on his siren. Defendant continued to flee, eventually running ten stop signs, and the chase at times reached speeds of eighty miles per hour. Defendant crossed over the center line when making turns, and the officer testified that at one point, when Defendant ran a stop sign while going fifty miles per hour in a *926 twenty-five mile per hour zone, Defendant barely missed colliding with another motorist. Defendant eventually turned his car into a mobile home sales lot and, when his vehicle was blocked by a stairway between two mobile homes, he abandoned it and crawled under a nearby mobile home. After an officer ordered him to come out, Defendant crawled back out and was arrested. The pursuit was videotaped by a dashboard video camera installed in the police car and this tape was shown at Defendant's trial.
{6} Defendant was charged with aggravated fleeing, driving with a suspended or revoked license, failure to have car insurance, resisting/evading, reckless driving, and improper display of a license plate. At trial, Defendant effectively conceded guilt on all but the aggravated fleeing charge, which was the only felony charge. In cross-examination and in his closing, Defendant focused on the officer's failure to comply with the elements of the Portales police department's pursuit policy. (However, the department's pursuit policy was not introduced as evidence and is not in the record.)
{7} Defendant objected to the State's proposed jury instruction on aggravated fleeing because it did not include any mention of compliance with either the Act or the local pursuit policy. Defendant asked the trial court to "add one more line" to the jury instruction in order to put to the jury the question of compliance with the Act. In response, the State argued that the Act "merely requires" that the local department have a pursuit policy in place and that the officer's testimony established this. The trial court declined to add any language to the instruction and concluded that compliance with the Act was a matter of law for the court to decide. Using this approach, the trial court ruled that the testimony of the pursuing officer showed compliance with the Act. Defendant objected again to the proposed instruction, contending that compliance was a factual matter for the jury. The trial court overruled Defendant's objection and gave the jury the following instruction:
For you to find [D]efendant guilty of Aggravated Fleeing a Law Enforcement Officer, as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt, each of the following elements of the crime:
1. [D]efendant operated a motor vehicle;
2. [D]efendant drove willfully and carelessly in a manner that endangered the life of another person;
3. [D]efendant had been given a visual or audible signal to stop, either by light, siren, or other signal, by a uniformed law enforcement officer;
4. The uniformed law enforcement officer was in an appropriately marked law enforcement vehicle engaged in a pursuit; [and]
5. This happened in New Mexico, on or about the 14th day of October, 2003.
{8} The jury convicted Defendant of all the charged crimes. Defendant appeals only his conviction for aggravated fleeing.

DISCUSSION
{9} Defendant argues that (1) the jury instructions in this case omitted an element of the offense; (2) even if the instructions were correct, there was insufficient evidence to support a conviction for aggravated fleeing; and (3) conviction of both aggravated fleeing and resisting/evading violates principles of double jeopardy. Because we agree with Defendant that the jury instruction on aggravated fleeing constitutes reversible error, we address his second argument to determine whether he is entitled to dismissal rather than retrial and conclude that sufficient evidence supported his conviction. We address Defendant's double jeopardy argument to provide guidance to the trial court on remand.

I. Jury Instruction on the Elements of Aggravated Fleeing
{10} As described above, the aggravated fleeing statute expressly references the Act by requiring that the pursuit be "in accordance with the provisions of the [Act]." § 30-22-1.1(A). Defendant argues that this is an essential element of the crime of aggravated fleeing and its absence from the jury instruction requires reversal of his conviction. The State responds that it would be *927 "absurd" to require police compliance with the Act as an element of aggravated fleeing because of the burden that would be imposed on the jury.
{11} Where the denial of a jury instruction involves statutory construction of an offense, we conduct de novo review. State v. Marshall, 2004-NMCA-104, 136 N.M. 240, ¶ 6, 96 P.3d 801; see State v. Rowell 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (stating that "interpretation of a statute is an issue of law" subject to de novo review). Our ultimate goal in statutory interpretation is to find and give effect to the intent of the legislature by looking to the plain meaning of the language used in the statute. State v. Smith, 2004-NMSC-032, ¶ 9, 136 N.M. 372, 98 P.3d 1022. We avoid any construction that would be "absurd, unreasonable, or contrary to the spirit of the statute." Id. ¶ 10. To search for legislative intent, we look at the overall structure and function of the statute in the comprehensive legislative scheme, we consider any particular provision in reference to the statute as a whole as well as to other statutes dealing with the same subject, and we strive to read different enactments as harmonious. Id. We are without power to revise the language used in a criminal statute. State v. Powell, 114 N.M. 395, 403, 839 P.2d 139, 147 (Ct.App.1992); see State v. Javier M., 2001-NMSC-030, ¶ 32, 131 N.M. 1, 33 P.3d 1 (holding that "[a] statute must be construed so that no part of the statute is rendered surplusage or superfluous" (internal quotation marks and citation omitted)); Torres v. State, 119 N.M. 609, 612, 894 P.2d 386, 389 (1995) (stating that "it is the particular domain of the legislature, as the voice of the people, to make public policy"). "What is, or is not, an essential element of an offense depends upon the statutory language." State v. Rhea, 93 N.M. 478, 480, 601 P.2d 448, 450 (Ct.App.1979).
{12} There is no uniform jury instruction for aggravated fleeing; thus, the trial court must craft an "appropriate instruction stating the essential elements" of the crime. UJI 14, General Use Note NMRA. A failure to instruct the jury on an element of a crime constitutes reversible error. State v. Nemeth, 2001-NMCA-029, 130 N.M. 261, 23 P.3d 936, rev'd on other grounds by State v. Ryon, 2005-NMSC-005, 137 N.M. 174, 108 P.3d 1032.
{13} As a starting point, we view the Act and the aggravated fleeing statute as evincing a legislative intent to promote two public policies: (1) to more severely punish people who jeopardize others by forcing police to pursue them while driving carelessly, and (2) to impose restraints on police pursuits and require police departments to closely scrutinize their policies and practices for engaging in high speed pursuits in light of the risks posed to both police and the public. We think compliance with the Act is an essential element for the fact finder for the simple reason that the phrase "in pursuit in accordance with the provisions of the [Act]" must be there for a purpose. Javier M., 2001-NMSC-030, ¶ 32, 131 N.M. 1, 33 P.3d 1. And, given the policy goals of these two statutes, we conclude that purpose is to motivate police to abide by the legislature's promulgated rules regarding safe pursuits. This is clear from reading the aggravated fleeing statute together with the Act.
{14} The statute's phrase, "in accordance with the provisions of the [Act]" modifies the word "pursuit." The aggravated fleeing statute imposes a number of conditions on the pursuer: (1) the officer must be in uniform, (2) the officer must be in an appropriately marked law enforcement vehicle, and (3) the officer must be "in pursuit in accordance with the provisions of the [Act]." § 30-22-1.1(A). Because the phrase "in accordance with" conditions the term "pursuit" we think the most natural reading of this language is that it is a particular pursuit, conducted by a specific officer or officers, which must be "in accordance with" the Act. This reading promotes the policy objectives of the Act and the aggravated fleeing statute by (1) more severely punishing a person who flees in a car in a dangerous manner, while at the same time (2) requiring that police obey the legislature's rules relating to high speed pursuits. However, because the training and filing requirements of the Act do not directly mandate how police conduct a particular pursuit, we think those requirements are not included in the evaluation of whether a given pursuit was *928 conducted "in accordance with the provisions of the [Act.]"
{15} The State contends that the phrase "in accordance with the provisions of the [Act]" simply means that the aggravated fleeing statute and the Act must not contradict one another, and by implication, that this phrase does not describe a particular pursuit as a factual matter. We do not fully understand this argument in terms of what it would leave for a trial court to evaluate in any given case. For example, would such an interpretation mean that a trial court need only conclude that the aggravated fleeing statute and the Act not conflict in the abstract? We are not persuaded and conclude that such a reading would render the phrase "in pursuit in accordance with the provisions of the [Act]" superfluous, which is contrary to our rules of statutory construction. Javier M., 2001-NMSC-030, ¶ 32, 131 N.M. 1, 33 P.3d 1.
{16} The State also contends that forcing police to comply with the Act is "not required since the statute itself has no penalty for failure to comply with its provision." We disagree. The penalty imposed on police for failing to comply with the Act is the fact that Defendant may not be convicted of the felony of aggravated fleeing. Denying police a criminal conviction for an accused is a time-honored way to motivate police compliance with the law. See United States v. Brooks, 438 F.3d 1231, 1240 (10th Cir.2006) (noting that, in the search and seizure context, the exclusionary rule is intended to motivate police compliance with the law and as a deterrent against police over reaching).
{17} We think a reasonable reading of the phrase "in accordance with" requires an evaluation of how police conduct the pursuit caused by a defendant. And while it is not common for an element of a crime to focus on the conduct of police rather than the conduct of a defendant, it is not unheard of in the criminal code. For example, for the crime of aggravated assault on a peace officer, one element of the offense is that the officer was carrying out his or her official duties at the time of the assault. Rhea, 93 N.M. at 480, 601 P.2d at 450. If the officer's conduct was outside of his or her official duties, the element is not met and the offense is not committed. Id. Here, we conclude that "in accordance with the provisions of the [Act]" refers to how police conduct a particular pursuit and that this language incorporates those concrete requirements contained in the Act for the conduct of high speed pursuits.
{18} The State also raises two additional concerns that we consider and reject in turn. First, the State raises a practical consideration that wholesale incorporation of the Act would be unworkable, burdensome, and contrary to legislative intent. The State conjures the specter of a complex trial-within-a-trial evaluating an officer's training on high speed pursuits and a detailed examination of the Act, and it concludes that requiring such an inquiry would be "absurd." Because we have held that the Act's general training and filing requirements are not part of the inquiry into how a specific pursuit is conducted, these aspects need not be proven to the fact finder.
{19} The tone of the State's argument also implies a second concern, that a jury is not equipped to evaluate whether a pursuit was conducted under the rules set out in the Act. Juries can and do regularly make factual determinations on complex questions. See State v. Aguayo, 114 N.M. 124, 132, 835 P.2d 840, 848 (Ct.App.1992) (observing that juries are able to evaluate complex evidence). We are not persuaded that, as a practical matter, proof of this element will prove burdensome or unworkable. And even if it were burdensome to show compliance with the Act, we have no power to rewrite the statute in order to simplify prosecution or ease the State's burden to prove every element of an offense. Our role is to further the letter and spirit of the language used by the legislature, and we think that by modifying "in pursuit" with the phrase "in accordance with the provisions of the [Act]," the legislature has plainly commanded that police conduct be evaluated as part of proving this crime. While the legislature is free to remove or modify this language, this Court may not do so. Powell, 114 N.M. at 403, 839 P.2d at 147.
*929 {20} One final question is whether the jury must evaluate a pursuit for compliance with the local police department's pursuit policy or with the Act. The Act requires that each local law enforcement agency have a pursuit policy and that these policies meet certain minimum standards. § 29-20-4(A), (C). We therefore think it furthers the goal of the legislature to focus on the local departmental policy. That local policy must contain the minimum rules in the Act, but this is not a factual matter for the jury. We think it appropriate for the judge to decide early in the proceedings, in writing, perhaps at a Foulenfont-type hearing, whether the local policy comports with the Act. We think it is intuitive that a pursuit would not be "in accordance with the provisions of the [Act]" if a local police department had no pursuit policy. Thus, there are two steps to proving whether a given pursuit was "in accordance with the provisions of the [Act]": (1) if the issue is contested, the judge may decide whether the local pursuit policy complies with the requirements of the Act and if sothen (2) the jury determines whether the officer's pursuit of a defendant complied with that local pursuit policy.
{21} Because the jury in this case was not instructed on an element of the offense charged, Defendant's conviction must be reversed. Reese v. State, 106 N.M. 498, 501, 745 P.2d 1146, 1149 (1987).

II. Sufficiency of the Evidence
{22} Next, we address Defendant's contention that insufficient evidence supported his conviction for aggravated fleeing. We address this argument because Defendant would be entitled to dismissal, instead of retrial, if the evidence at trial were insufficient to support his conviction. State v. Jojola, 2005-NMCA-119, ¶ 2, 138 N.M. 459, 122 P.3d 43, cert. granted, 2005-NMCERT-010, 138 N.M. 495, 122 P.3d 1264. In missing-element jury instruction cases, we review the sufficiency of the evidence under the instructions as given, even if the instructions were erroneous. State v. Rosaire, 1996-NMCA-115, ¶¶ 20, 21, 123 N.M. 250, 939 P.2d 597. "The standard of review for sufficiency of evidence claims requires us to view all of the evidence in the light most favorable to support the jury's verdict, and to determine whether any rational jury could find all elements of the crime based on the facts presented at trial." State v. Lopez, 2005-NMSC-036, ¶ 20, 138 N.M. 521, 123 P.3d 754 (internal quotation marks omitted).
{23} We need not repeat the jury instruction on the charge of aggravated fleeing. After reviewing the testimony given and viewing the videotape of the pursuit, we conclude that sufficient evidence supported a finding of guilt under the instruction given. The evidence showed that Defendant was operating a motor vehicle in a willful and careless manner, and he never contested that he was behind the wheel. We think a rational jury could have found that Defendant endangered another person in either of two ways. First, the officer testified about the danger to another motorist on the road, whom Defendant came close to striking. Second, the officer testified that the passenger door of Defendant's car was ajar at different points in the pursuit, and it was later established that the passenger door was incapable of being latched closed. The officer had given both visual and audible signals to Defendant to stop and the officer testified, and the video shows, that he was uniformed. Finally, the officer testified that he was in a marked police car and was engaged in a pursuit on the date in question. The evidence adduced was sufficient to support a finding of guilt under the elements as charged in the erroneous instruction. Therefore, Defendant is not entitled to a dismissal.

III. Multiple Punishment and Double-Description
{24} Because we remand, we address Defendant's double jeopardy argument that if he is tried and convicted again for aggravated fleeing, he cannot also be found guilty of resisting/evading for the same conduct. We agree that resisting/evading is a lesser included offense of aggravated fleeing. We begin with a review of the jury instructions on the resisting/evading count because they govern our analysis. See State v. Mora, 2003-NMCA-072, ¶ 21, 133 N.M. 746, 69 P.3d 256 (noting that where an offense may be *930 charged in alternative ways, we only examine the statutory elements as charged to the jury for double jeopardy purposes). We then discuss the category of multiple punishment cases referred to as double-description cases, and finally, we evaluate whether Defendant could be convicted for both resisting/evading and aggravated fleeing for one course of conduct.
{25} The jury was instructed as follows on the charge of resisting/evading:
For you to find [D]efendant guilty of resisting, evading or obstructing an officer, as charged in Count IV, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
1. Glenn Russ was a peace officer in the lawful discharge of his duties;
2. [D]efendant, with the knowledge that Glenn Russ was attempting to apprehend or arrest [D]efendant, fled, attempted to evade or evaded Glenn Russ; OR
2. [D]efendant resisted or abused Glenn Russ in the lawful discharge of Glenn Russ' duties;
3. This happened in New Mexico on or about the 14th day of October, 2003.
This instruction was modeled after the resisting/evading model instruction, except that, instead of containing only one of the two alternatives, as the Use Note directs, the instruction given contained both alternatives. UJI 14-2215, Use Note 4 NMRA. The jury convicted Defendant of resisting/evading, but it did not indicate which alternative it found was proven. In this situation, we are required to presume that the jury selected the alternative that violates double jeopardy because the jury cannot be expected to discern legally insufficient alternatives from legally sufficient ones. State v. Foster, 1999-NMSC-007, ¶¶ 27, 28, 126 N.M. 646, 974 P.2d 140. We conclude that conviction of the first alternative instruction (the most generic charge of evading) would violate double jeopardy under the circumstances of this case.
{26} The double jeopardy clause of the federal constitution applies to the states and prohibits multiple punishments for "the same offense." State v. DeGraff, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citations omitted). We analyze a multiple punishment double jeopardy challenge under Swafford v. State, 112 N.M. 3, 810 P.2d 1223 (1991), and its progeny. Specifically, where a person is charged with violations of multiple statutes for the same conduct, we analyze the challenge as a so-called double-description issue. Id. at 8, 810 P.2d at 1228. In a double-description case, double jeopardy bars a conviction if the conduct underlying the two offenses is unitary and the legislature has not indicated an intent to punish the same conduct separately. DeGraff, 2006-NMSC-011, ¶ 26, 139 N.M. 211, 131 P.3d 61.
{27} The first step involves a determination of whether the conduct at issue is unitary, meaning whether Defendant's actions may be reasonably viewed as one distinct act or transaction. See id.; State v. Franco, 2005-NMSC-013, ¶¶ 9, 10, 137 N.M. 447, 112 P.3d 1104 (evaluating the factual distinctiveness of conduct to determine whether a jury could have found two distinct acts). We make this determination based upon an evaluation of whether there are sufficient "indicia of distinctness" in the actions including any separations in time or space, the similarity of the acts, their sequence, intervening events, and defendant's goals and mental state in the context of each act. Franco, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). Where a defendant's behavior constitutes two distinct acts, then the conduct is non-unitary and there is no double jeopardy bar to separate convictions because the "same conduct" is not being doubly punished. See DeGraff, 2006-NMSC-011, ¶ 31, 139 N.M. 211, 131 P.3d 61; Swafford, 112 N.M. at 14, 810 P.2d at 1234 (stating that a double jeopardy multiple punishment inquiry ends when conduct is "separate and distinct").
{28} We conclude the conduct here is unitary because it is virtually indistinguishable from conduct that we determined to be unitary in State v. LeFebre, 2001-NMCA-009, ¶ 18, 130 N.M. 130, 19 P.3d 825. In LeFebre, a suspect fled from police until his car became *931 stuck in a field. Id. ¶ 2. He then continued to flee on foot and hid until he was arrested. Id. The defendant was charged and convicted of both resisting/evading for failing to stop his car, as well as the more generic form of evading for his flight on foot. Id. ¶ 18. We held that such conduct was unitary because there was one course of flight from the police. We were not persuaded that there was any change in motivation, nature of the act (based upon mode of flight), or any intervening event. Id.
{29} The State argues that the conduct we held to be unitary in LeFebre is no longer deemed unitary due to the creation of the new statute for aggravated fleeing. Determination of whether conduct is unitary is primarily a factual determination in light of the elements of the charged offenses. Franco, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104; Swafford, 112 N.M. at 14, 810 P.2d at 1234 (stating that "the task is merely to determine whether the conduct for which there are multiple charges is discrete (unitary) or distinguishable"). The facts in this case are effectively identical to those in LeFebre. However, our Supreme Court has recently emphasized that conduct may be viewed as non-unitary if one can clearly discern a point in the events where one crime has been completed and another crime has yet to be committed. DeGraff, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61 (stating that "[i]n our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed"). The State contends that when Defendant stopped his car due to an obstacle, he had completed the crime of aggravated fleeing. Then, when Defendant left his car and fled on foot, he committed another crime, resisting/evading. We do not agree because this is precisely the approach that we rejected in LeFebre, and we see no reason to adopt it now. 2001-NMCA-009, ¶ 23, 130 N.M. 130, 19 P.3d 825.
{30} In LeFebre we treated different provisions of the resisting/evading statute as separate statutes for double jeopardy purposes. Id. ¶ 16. The State is correct that since LeFebre was decided, the legislature has enacted another statute addressing evading the police, that is, doing so while driving carelessly and endangering others, known as aggravated fleeing. § 30-22-1.1. But the addition of yet another statute to the landscape does not alter the approach we adopted in LeFebre, that it is artificial to parse conduct when a suspect flees from the police in one way and then immediately continues to flee in another way. In short, we do not think the addition of another statute converts what we have concluded is factually unitary conduct into non-unitary conduct. We leave open the possibility that a defendant's conduct in fleeing from the police may be distinct when the facts show a separation in time or space between acts or changes in the nature, intent, or objective of the conduct. See 2001-NMCA-009, ¶ 17, 130 N.M. 130, 19 P.3d 825. However, the conduct at issue here is factually indistinguishable from that in LeFebre, and we remain of the view that this manner of fleeing represents one distinct course of conduct.
{31} Having found that Defendant's conduct is unitary, we turn to the second step in a double-description analysis: whether there is any indication of legislative intent to punish unitary conduct separately. State v. Dominguez, 2005-NMSC-001, ¶¶ 5, 6, 137 N.M. 1, 106 P.3d 563. The State contends that creating the crime of aggravated fleeing evinces a legislative intent to separately punish unitary conduct. Defendant responds by arguing that resisting/evading in Section 30-22-1(B) is a lesser included offense of aggravated fleeing and thus, he cannot be convicted of both crimes for the same conduct. We agree with Defendant on this point.
{32} The "sole limitation on multiple punishments is legislative intent." Swafford, 112 N.M. at 13, 810 P.2d at 1233.
Absent a clear expression of legislative intent, a court first must apply the Blockburger test to the elements of each statute. If that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposespunishment cannot be had for both.
Id. at 14, 810 P.2d at 1234. In our search for legislative intent, we focus on the statutory *932 elements of the offenses at issue, and not the evidence or proof offered at trial. Dominguez, 2005-NMSC-001, ¶ 12, 137 N.M. 1, 106 P.3d 563.
{33} Our Supreme Court has stated that we should consider the level of punishment set by the legislature:
Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the legislature did not intend punishment under both statutes. If the punishment attached to an offense is enhanced to allow for kindred crimes, these related offenses may be presumed to be punished as a single offense.
Swafford, 112 N.M. at 15, 810 P.2d at 1235.
{34} The crimes in this case are clearly "kindred" crimes, and we think this rule applies here. The base offense of resisting/evading by "intentionally fleeing, attempting to evade or evading," § 30-22-1(B), is a misdemeanor, and aggravated fleeing, a fourth degree felony, incorporates the elements of fleeing or evading. Under a Blockburger elements analysis, aggravated fleeing contains several elements not contained in evading, such as driving a car carelessly to endanger another. § 30-22-1.1(A) However, the reverse is not truemisdemeanor evading contains no additional elements beyond those in aggravated fleeing. By definition, to carelessly drive a car fleeing from the police is to evade or attempt to evade. We think that it is not possible to commit aggravated fleeing without "evading or attempting to evade" as defined in the resisting/evading statute. See State v. Collins, 2005-NMCA-044, ¶ 9, 137 N.M. 353, 110 P.3d 1090 (explaining that one crime is a lesser-included offense of another when it would be impossible to commit the greater offense without committing the lesser because the statutory elements of the lesser crime are a sub-set of the elements of the greater crime); State v. Diaz, 121 N.M. 28, 30, 908 P.2d 258, 260 (Ct.App.1995) (stating that "[i]n general, a crime is a lesser included offense of another when the defendant could not have committed the greater offense without also committing the lesser offense"). The only arguable difference in the two crimes is a slightly different articulation of the necessary mental state. Evading requires the defendant to be evading while "knowing" that the police are attempting to apprehend him. § 30-22-1(B). Aggravated fleeing requires the defendant to be "wilfully" fleeing once a signal to stop has been given. § 30-22-1.1(A). We see this as a distinction without a difference because evading "wilfully" implies knowledge that the police are attempting to apprehend.
{35} Thus, we conclude that there are no indications of any legislative intent to allow multiple punishments for misdemeanor resisting/evading and aggravated fleeing when there is unitary conduct. We hold that resisting/evading under Section 30-22-1(B) is a lesser included offense of aggravated fleeing and that Defendant may not be convicted of both crimes for the same course of conduct. Swafford, 112 N.M. at 15, 810 P.2d at 1235.
{36} Where we conclude that double jeopardy has been violated, we vacate the lesser offense and retain the conviction for the greater offense. State v. Santillanes, 2001-NMSC-018, ¶ 37, 130 N.M. 464, 27 P.3d 456. Thus we vacate the conviction for resisting/evading. Since we have found reversible error as to the greater offense, that conviction is reversed. Upon retrial, the State may charge Defendant with aggravated fleeing, which, as we have held, contains the lesser included offense of resisting/evading. Thus, if the evidence is similar to that at the first trial, Defendant may request a lesser included instruction upon retrial. State v. Jernigan, 2006-NMSC-003, ¶ 21, 139 N.M. 1, 127 P.3d 537 (explaining that the defendant is entitled to a lesser included offense instruction where there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed). Double jeopardy principles require that here, where the conduct is unitary, Defendant may be convicted on retrial of either aggravated fleeing or resisting/evading, but not of both crimes.

CONCLUSION
{37} For the foregoing reasons, we reverse Defendant's conviction for aggravated fleeing *933 and vacate the conviction for resisting/evading. We remand for a new trial consistent with this opinion.
{38} IT IS SO ORDERED.
WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and JAMES J. WECHSLER, Judge.