STATE V. GONZALES

This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**DAVID GONZALES,**
**Defendant-Appellant.**

NO. A-1-CA-35196

COURT OF APPEALS OF NEW MEXICO

February 21, 2019

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY, Douglas R. Driggers, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, Charles J. Gutierrez, Assistant Attorney General, Albuquerque, NM, for Appellee

Bennett J. Baur, Chief Public Defender, C. David Henderson, Appellate Defender, Santa Fe, NM, for Appellant

**JUDGES**

JENNIFER L. ATTREP, Judge. WE CONCUR: LINDA M. VANZI, Judge, J. MILES HANISEE, Judge

**AUTHOR:** JENNIFER L. ATTREP

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Defendant David Gonzales appeals his convictions for aggravating fleeing a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003), and resisting,

evading or obstructing an officer, contrary to NMSA 1978, Section 30-22-1 (1981). Defendant raises the following issues on appeal—whether (1) "pursuit" by a law enforcement officer is an essential element of aggravated fleeing and the district court's failure to instruct the jury on this element resulted in reversible error; (2) there was sufficient evidence to support Defendant's aggravated fleeing conviction; and (3) Defendant's convictions for aggravated fleeing and resisting, evading or obstructing an officer violate double jeopardy. We conclude that Defendant's convictions for both aggravated fleeing and resisting, evading or obstructing an officer violate the prohibition against double jeopardy. Accordingly, we remand to the district court to vacate Defendant's conviction for resisting, evading or obstructing an officer. Otherwise, we affirm.

**BACKGROUND**

**{2}** While on duty in a marked patrol car, Officer Veronica De La O of the Las Cruces Police Department received a be-on-the-lookout (BOLO) alert for a large blue truck with a flatbed traveling north. Three to five minutes after receiving the BOLO, Officer De La O saw a vehicle matching the description and observed the driver (later identified as Defendant) drinking what she believed to be a beer. Officer De La O then observed Defendant turn left in front of oncoming traffic, causing several cars to slam on their brakes to avoid a collision. Officer De La O engaged her lights, signaled Defendant to pull over, and activated her air horn. Defendant drove into a congested shopping center parking lot, weaving through parking spaces and vehicles, and nearly crashing into a light pole.

**{3}** Defendant then stopped his vehicle but never shifted out of drive. Officer De La O left her emergency lights on, exited her patrol car, and approached Defendant's vehicle. Defendant looked briefly at Officer De La O, then drove off at a high rate of speed through the drop-off area of Goodwill Industries without yielding to pedestrians or traffic. Officer De La O had to jump out of the way to avoid being hit by the flatbed attached to Defendant's truck. Officer De La O testified that she then "immediately got back into [her] unit and began to follow [Defendant]." She estimated it took her about five seconds to get back into her patrol car and another "couple of seconds" to engage her sirens. Officer De La O alerted other officers via radio that she "was going to be in a pursuit" of Defendant.

**{4}** Officer De La O then drove after Defendant but did not directly follow him through the drop-off area. She chose instead to go around the store and onto the street in order to leave the parking lot area "as safely as [she] could." Although Officer De La O could not see Defendant, she knew his general trajectory because several pedestrians and drivers were gesturing in the direction Defendant had gone, and she could see a large cloud of dust in that direction. Within two to three minutes of leaving the parking lot, Officer De La O found Defendant's unoccupied truck crashed in the front yard of a residence. Officer De La O continued on foot and located Defendant in the yard of a residence two or three houses down from the crash.

**{5}** Officer Julian Gomez joined Officer De La O in attempting to apprehend Defendant soon after being alerted by radio that Officer De La O had observed a truck matching the BOLO description. As he approached the parking lot, however, Officer Gomez saw Defendant take off at a high rate of speed. Officer Gomez then activated his lights and sirens and made a U-turn in an attempt to apprehend Defendant. Officer Gomez followed the path he believed Defendant had taken and eventually caught a glimpse of the tail end of Defendant's vehicle as it turned onto a side street. Officer Gomez came upon Defendant's crashed vehicle approximately thirty to sixty seconds later.

**{6}** Ana Marie Aldaz, a pedestrian walking in the area at the time Defendant fled from Officer De La O, testified that she observed a truck "fl[y] past" her, driving around the corner "in a dangerous fashion." Ms. Aldaz was scared that the truck was going to "keel over on top of [her]" because of its speed as it went around the corner. A minute after seeing the truck, Ms. Aldaz heard sirens and saw two police cars drive past, describing that the officers "were on [Defendant's] heels."

**{7}** Defendant was charged with aggravated fleeing; resisting, evading or obstructing an officer; aggravated driving while under the influence; no proof of insurance; and driving with a suspended license. Prior to the conclusion of trial, Defendant pleaded guilty to the charge of driving with a suspended license. The jury found Defendant guilty on all remaining charges. Defendant appeals his convictions for aggravated fleeing and resisting, evading or obstructing an officer.

## DISCUSSION

### I. Instructional Error

**{8}** With respect to his aggravated fleeing conviction, Defendant argues that the district court erred in refusing to give an instruction that the officer was "in pursuit" of Defendant. The relevant portion of the aggravated fleeing statute provides:

> Aggravated fleeing a law enforcement officer consists of a person willfully and carelessly driving his vehicle in a manner that endangers the life of another person after being given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle *in pursuit* in accordance with the provisions of the Law Enforcement Safe Pursuit Act.

Section 30-22-1.1(A) (emphasis added). At trial, the State proposed to instruct the jury using the uniform jury instruction for aggravated fleeing, UJI 14-2217 NMRA. In response, Defendant asked the district court to modify the instruction to include "pursuit" as an element. The district court denied Defendant's request and instructed the jury in accordance with the uniform jury instruction for aggravated fleeing as follows:

For you to find [D]efendant guilty of aggravated fleeing a law enforcement officer as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

    1.    [D]efendant operated a motor vehicle;

    2.    [D]efendant drove willfully and carelessly in a manner that endangered the life of another person;

    3.    [D]efendant had been given a visual or audible signal to stop by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle;

    4.    [D]efendant knew that a law enforcement officer had given him an audible or visual signal to stop;

    5.    This happened in New Mexico on or about the 21st day of February, 2011.

*See* UJI 14-2217.

**{9}** Because Defendant preserved his challenge to the jury instructions, our review on appeal is for reversible error.[1] *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "Reversible error arises if a reasonable juror would have been confused or misdirected." *State v. Montoya*, 2015-NMSC-010, ¶ 25, 345 P.3d 1056 (omission, internal quotation marks, and citation omitted). "Failure to instruct the jury on an essential element of the charged offense has been held to be reversible error." *Santillanes v. State*, 1993-NMSC-012, ¶ 32, 115 N.M. 215, 849 P.2d 358. "When there can be no dispute that the essential element was established, however, failure to instruct on that element does not require reversal of the conviction." *Id.*

**{10}** Because we conclude that there can be no dispute that "pursuit" was established in this case, we need not decide whether "pursuit" is an element essential to aggravated fleeing that must be instructed to the jury. Instead, for purposes of this opinion, we assume that "a law enforcement officer . . . [being] in pursuit" of the accused is an essential element of the crime of aggravated fleeing. Section 30-22-1.1(A); *see State v. Romero*, ___-NMSC-___, ¶¶ 53, 55, ___ P.3d___ (No. S-1-SC-36229, Dec. 27, 2018) (noting that "[t]he absence of 'pursuit' in the jury instruction is not dispositive of whether pursuit is an element essential to aggravated fleeing" and proceeding with sufficiency of the evidence analysis by treating "pursuit" as an essential element of aggravated fleeing).

**{11}** In support of his argument that "pursuit" was contested, Defendant contends that aggravated fleeing "cannot be committed when there was no direct pursuit." Defendant elaborates that there was no "pursuit" in this case because Officer De La O "decided not to follow [Defendant] directly and lost sight of him for up to three minutes." Defendant's

contention that "pursuit" can only be established when the officer followed the defendant's direct path without losing visual contact is made without citation to any authority, and we can fairly assume that none exists. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists[.]"). Further, under Defendant's construction of the aggravated fleeing statute, a defendant who flees quickly and dangerously enough would be insulated from prosecution for aggravated fleeing. Such a construction seems directly contrary to what the Legislature had in mind when it enacted the aggravated fleeing statute and would lead to absurd and unreasonable results. *See State v. Padilla* (*Padilla II*), 2008-NMSC-006, ¶ 21, 143 N.M. 310, 176 P.3d 299 ("The statute appears to be designed to protect the general public from the dangers of a high speed chase."); *State v. Davis*, 2003-NMSC-022, ¶ 13, 134 N.M. 172, 74 P.3d 1064 ("No rule of construction necessitates our acceptance of [a statutory] interpretation resulting in patently absurd consequences." (internal quotation marks and citation omitted)).

**{12}** Accordingly, we decline Defendant's invitation to read the word "directly" into the aggravated fleeing statute, and instead give the words in the statute their plain meaning. *See State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125 ("In discerning legislative intent, we look first to the language used and the plain meaning of that language. . . . We will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written." (citations omitted)). The term "pursuit" is not defined in the relevant criminal statutes, and we thus look to the dictionary definition of the term. *See State v. Lindsey*, 2017-NMCA-048, ¶ 14, 396 P.3d 199 ("[O]ur courts often use dictionary definitions to ascertain the ordinary meaning of words that form the basis of statutory construction inquiries." (internal quotation marks and citation omitted)). "Pursuit" is defined as the act of "follow[ing] in order to overtake [or] capture[.]" *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/pursue (last visited on Feb. 8, 2019); *cf.* NMSA 1978, § 29-20-2 (2003) (defining a "high speed pursuit" as "an attempt by a law enforcement officer in an authorized emergency vehicle to apprehend an occupant of a motor vehicle, the driver of which is actively attempting to avoid apprehension by exceeding the speed limit").

**{13}** In view of the plain meaning of "pursuit," there can be no dispute that the evidence at trial established that Officer De La O was in continuous pursuit of Defendant throughout the relevant events. *See Santillanes*, 1993-NMSC-012, ¶¶ 32-34 (holding that there was no reversible error when the court failed to instruct on an element that was clearly established by the evidence at trial). During the initial traffic stop, Officer De La O engaged her lights and air horn in an attempt to get Defendant to stop his vehicle. At that time, Defendant drove through a congested parking lot, weaving through parking spaces and vehicles. Defendant stopped only briefly, waited for Officer De La O to approach Defendant's truck, and then sped off from the parking lot, again failing to yield to pedestrians and traffic. It took Officer De La O mere seconds to get back into her patrol car, engage her sirens, and take chase after Defendant. Officer De La O then proceeded to follow Defendant in the direction of the cloud of dust created by Defendant's truck and with the assistance of onlookers. Officer Gomez also gave chase

and observed Defendant's fleeing vehicle in his attempt to locate Defendant. Both officers came upon Defendant's wrecked truck shortly after Defendant fled the shopping center parking lot.

**{14}** During this entire episode, Defendant engaged in a continuous flight from Officer De La O and Officer De La O engaged in a continuous pursuit of Defendant. *Cf. Romero*, ___-NMSC-___, ¶¶ 54-56 (determining there was a continuous course of aggravated fleeing under analogous circumstances where the defendant continued to flee after an initial traffic stop). Under the facts of this case, "no rational jury could have concluded" that Officer De La O was not "in pursuit" of Defendant. *See Santillanes*, 1993-NMSC-012, ¶ 34. Thus, even assuming "pursuit" is an essential element of aggravated fleeing, as we have in this case, the district court's failure to instruct on that element did not amount to reversible error. *See id.*

## II.  Sufficiency of the Evidence

**{15}** Defendant does not contest that there was sufficient evidence to support the aggravated fleeing elements submitted to the jury. Instead, Defendant's sufficiency argument hinges on his claim that there was insufficient evidence of "pursuit" as set forth above. Because we have held that no rational jury could have concluded that there was no pursuit, Defendant's sufficiency of the evidence argument is likewise without merit. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 ("The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (alteration, internal quotation marks, and citation omitted)).

## III.  Double Jeopardy

**{16}** Relying on this Court's holding in *State v. Padilla* (*Padilla I*), 2006-NMCA-107, 140 N.M. 333, 142 P.3d 921, *overruled on other grounds by Padilla II*, 2008-NMSC-006, Defendant argues that his convictions for aggravated fleeing (Section 30-22-1.1) and resisting, evading or obstructing an officer (Section 30-22-1(B)) stem from unitary conduct and violate double jeopardy.[2] "A double jeopardy claim is a question of law that we review de novo." *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

**{17}** The double jeopardy clause "protects defendants from receiving multiple punishments for the same offense." *State v. Ramirez*, 2018-NMSC-003, ¶ 38, 409 P.3d 902 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises what is commonly referred to as a double-description double jeopardy claim, "in which a single act results in multiple charges under different criminal statutes[.]" *Bernal*, 2006-NMSC-050, ¶ 7. We previously determined in *Padilla I* that "there are no indications of any legislative intent to allow multiple punishments for misdemeanor resisting/evading and aggravated fleeing when there is unitary conduct." 2006-NMCA-107, ¶ 35. Thus, we held "that resisting/evading

under Section 30-22-1(B) is a lesser included offense of aggravated fleeing and that [a d]efendant may not be convicted of both crimes for the same course of conduct." *Id.*

**{18}** The State concedes that the conduct at issue here is unitary and we agree. While acknowledging that this concession compels the conclusion that Defendant's convictions for both aggravated fleeing and the lesser included offense of resisting, evading or obstructing an officer violate double jeopardy under *Padilla I*, the State nonetheless urges us to revisit *Padilla I* and abandon its holding. In support of this, the State posits that while our "Supreme Court ultimately reversed this Court in *Padilla II* on different grounds, . . . its reasoning gutted this Court's opinion [in *Padilla I*]." The State thus contends, "[s]tare decisis does not mandate continued adherence to *Padilla I* because it is unsoundly reasoned and contrary to *Padilla II*." We disagree.

**{19}** We first note that this Court's holding in *Padilla I*—that convictions for both aggravated fleeing and resisting, evading or obstructing an officer (Section 30-22-1(B)) violate double jeopardy—was not disturbed by our Supreme Court in *Padilla II* and has not been disturbed in the intervening eleven years since *Padilla II*. *See* 2008-NMSC-006, ¶ 34 ("We remand this case to the district court to vacate [the d]efendant's conviction for resisting, evading or obstructing in accordance with that part of the Court of Appeals opinion which is not the subject of review herein."); *see also State v. Velarde*, No. A-1-CA-33812, mem. op. ¶ 11 (N.M. Ct. App. Nov. 20, 2017) (non-precedential) (recently applying *Padilla I* and vacating the defendant's resisting, evading or obstructing conviction on double jeopardy grounds).

**{20}** Moreover, the State has not satisfied the high burden our courts adhere to before overturning prior precedent. "Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 33, 125 N.M. 721, 965 P.2d 305. "It promotes very important principles in the maintenance of a sound judicial system: (1) stability of the law, (2) fairness in assuring that like cases are treated similarly, and (3) judicial economy[.]" *Id.* (citations omitted). Thus, "any departure from precedent demands special justification," in light of the following factors:

> (1) whether the precedent is so unworkable as to be intolerable; (2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; (3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and (4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*Id.* ¶ 34 (alteration, omission, internal quotation marks, and citations omitted). The State has not argued, let alone established, that any one of these factors has been met here. Absent such a demonstration, we decline to consider overruling *Padilla I*. *See State v. Riley*, 2010-NMSC-005, ¶ 40, 147 N.M. 557, 226 P.3d 656 (Chávez, J., specially concurring) ("[The appellant] does not make a case for us to overrule our precedent by applying the factors relevant to a stare decisis analysis. [The appellant] simply asks us

to reconsider [our] holding[.] . . . This unilluminating request lacks the disciplined approach we have required in numerous opinions on the subject of stare decisis." (citation omitted)), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 54, 306 P.3d 426.

**{21}** Applying *Padilla I*, we conclude that Defendant's convictions for aggravated fleeing and resisting, evading or obstructing an officer (Section 30-22-1(B)) for the same course of conduct violate double jeopardy. *See* 2006-NMCA-107, ¶¶ 35-36. Accordingly, Defendant's conviction for the lesser offense of resisting, evading or obstructing an officer must be vacated. *See id.* ¶ 36.

**CONCLUSION**

**{22}** We hold that Defendant's convictions for aggravated fleeing a law enforcement officer and resisting, evading or obstructing an officer violate the prohibition against double jeopardy. We therefore remand to the district court to vacate the lesser offense of resisting, evading or obstructing an officer and to resentence Defendant accordingly. Having concluded Defendant's remaining claims of error are without merit, we otherwise affirm.

**{23}    IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**J. MILES HANISEE, Judge**

---

1 To the extent our review involves the interpretation of our criminal statutes, "that presents a question of law which is reviewed de novo on appeal." *State v. Chavez*, 2009-NMSC-035, ¶ 10, 146 N.M. 434, 211 P.3d 891.

2 The jury was instructed in the alternative under both Subsections (B) and (C) of the resisting, evading or obstructing an officer statute, Section 30-22-1. The parties, however, analyze Defendant's double jeopardy claim under Section 30-22-1(B) alone, and we do the same. *See State v. Foster*, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140 ("[W]e must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative."), *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683.