# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-027

Filing Date: February 17, 2020

No. A-1-CA-36381

STATE OF NEW MEXICO,

     Plaintiff-Appellee,

v.

JUVENTINO SERRATO,

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Certiorari Denied, May 4, 2020, No. S-1-SC-38204. Released for Publication August 31, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**M. ZAMORA, Judge.**

**{1}** Defendant Juventino Serrato appeals his convictions of kidnapping (first-degree), contrary to NMSA 1978, Section 30-4-1 (2003); criminal sexual contact of a minor (CSCM) (third-degree) (child under 13), contrary to NMSA 1978, Section 30-9-13(C)(1) (2003); and enticement of a child, contrary to NMSA 1978, Section 30-9-1 (1963). Defendant challenges the sufficiency of the evidence of his CSCM and first-degree

kidnapping convictions. Defendant also argues that his right to be free from double jeopardy is violated by multiple punishments for (1) first-degree kidnapping and enticement of a child, and (2) first-degree kidnapping and CSCM. We conclude that Defendant's double jeopardy rights were violated because in this case, his convictions for enticement of a child and CSCM were subsumed in his first-degree kidnapping conviction. Therefore, we reverse and remand to the district court to vacate Defendant's convictions for enticement of child and CSCM conviction. Consequently, we need not reach Defendant's sufficiency arguments.

**BACKGROUND**

**{2}**     Defendant's convictions arose from an incident whereby he kidnapped Victim, a ten-year-old girl, from her bedroom window and took her into his home where he asked her to have sex. Victim testified to the following facts at trial.

**{3}**     Defendant lived across the street from Victim and her family. On the evening in question, Victim left her mother's bedroom where she was sleeping to use the restroom around 11:17 p.m. when she heard a noise coming from the kitchen. She looked in the kitchen but did not see anything. She then heard a whistling noise coming from her bedroom and went to look. She looked in her closet and under her bed and then heard another whistle near her window. Victim turned the lights on and opened the window to look outside. She did not see anything and was about to close the window when Defendant grabbed her hand. Victim moved her hand away but when she was turning around, Defendant grabbed her by the hood of her jacket and pulled her outside onto the windowsill. Victim was going to scream for her mother, but Defendant put his arm around her month.

**{4}**     Defendant told her that he wanted to show her something. Victim was curious to see what he had to show her and asked what it was. She followed Defendant across the street to his residence as Defendant was holding her hand "really tight." They entered the residence and then went into what appeared to be Defendant's bedroom. Once they both entered the bedroom, Defendant propped a box spring over the entryway and blocked the exit with a "metal thing." Victim sat on the bed. Defendant asked her in Spanish if she "wanted sex," and Victim told him no.

**{5}**     Defendant sat next to Victim on the bed and rubbed her back and asked if she was okay. Victim stood up and asked to leave but Defendant responded that Victim could not and that she would have to stay and live with him. Victim told him she wanted to go home. Defendant got up and grabbed Victim's hand and led her back toward the bed, and they both sat down.

**{6}**     Defendant then started touching Victim. She testified that Defendant touched her on the legs by the knees and then ran his hand up to Victim's stomach. After he placed his hand on Victim's stomach, Defendant ran his hand from Victim's stomach, over Victim's chest, and up to her neck. Victim explained what she believed to be her "private parts," describing that "up here" she has "chests" and "once you hit puberty, they then

start growing." Victim testified that Defendant "[l]ike with his hand, he went over my chest." Victim testified that the "whole" "front of his hand" went from her neck down to her belly.

**{7}**     Eventually Defendant stopped touching Victim and began talking to her. Victim heard her mother calling for her, and Defendant told Victim to leave and she ran to her mother on the other side of the street.

**{8}**     Defendant was convicted of first-degree kidnapping, third-degree CSCM, and enticement of a child. Defendant appeals.

## DISCUSSION

**{9}**     We begin with Defendant's double jeopardy arguments. Concluding that we must vacate his convictions for enticement of a child and CSCM, we need not reach his sufficiency arguments.

## I.     Double Jeopardy

**{10}**     Defendant argues that his right to be free from double jeopardy was violated because his convictions for enticement of a child and CSCM were subsumed in his first-degree kidnapping conviction. We agree.

**{11}**     The United States and New Mexico Constitutions guard against double jeopardy violations, guaranteeing that no person shall be "twice put in jeopardy" for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. "[D]ouble jeopardy protects against both successive prosecutions and multiple punishments for the same offense." *State v. Contreras*, 2007-NMCA-045, ¶ 19, 141 N.M. 434, 156 P.3d 725 (internal quotation marks and citation omitted). Defendant's case involves the latter type—multiple punishments for the same offense. Appellate courts classify multiple punishment cases in two ways, double-description, a single act results in multiple charges under different criminal statutes; and unit of prosecution, conviction for multiple violations of the same criminal statute. *See State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655 (providing overview of multiple punishment cases). In this case, Defendant alleges the same conduct resulted in multiple convictions under two different statutes, thus we apply a double-description analysis. Defendant's double jeopardy challenges present a constitutional question of law, which we review de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

**{12}**     For double-description claims, this Court follows the two-part test identified in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. First, we determine whether the conduct underlying the offenses is unitary, that is, whether the same conduct violates both statutes. *Id.* Second, we determine whether the Legislature intended to create separately punishable offenses. *Id.* "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy

clause prohibit multiple punishment in the same trial." *Id*. We address each double jeopardy argument in turn.

## A. Kidnapping and Enticement of a Child

### 1. Unitary Conduct

**{13}** The State does not dispute the first prong and concedes that the conduct underlying both convictions was unitary because the evidence supporting Defendant's kidnapping by deception and enticement of a child were the same. While we do not need to accept the State's concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we agree that Defendant's convictions for kidnapping and enticement of a child were premised upon unitary conduct: Defendant telling Victim that he wanted to show her something. *See, e.g.*, *State v. Gonzales*, 2019-NMCA-036, ¶¶ 20-21, 444 P.3d 1064 (presuming unitary conduct because the state in closing explicitly directed the jury to consider the same conduct to support the defendant's convictions for both charges), *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37707, Jul. 1, 2019). We must next examine whether the Legislature intended multiple punishments.

### 2. Legislative Intent

**{14}** While we acknowledge that this Court has previously addressed the double jeopardy implications for kidnapping and enticement of a child, *see State v. Laguna*, 1999-NMCA-152, ¶ 37, 128 N.M. 345, 992 P.2d 896, and *State v. Garcia*, 1983-NMCA-069, ¶ 21, 100 N.M. 120, 666 P.2d 1267, neither opinion fully analyzed this issue under New Mexico's double jeopardy jurisprudence. We therefore take this opportunity to conduct a full double jeopardy analysis of these two crimes.

**{15}** "The sole limitation on multiple punishments is legislative intent[.]" *State v. Franco*, 2005-NMSC-013, ¶ 12, 137 N.M. 447, 112 P.3d 1104 (alteration, internal quotation marks, and citation omitted); *see also State v. Gutierrez*, 2011-NMSC-024, ¶ 50, 150 N.M. 232, 258 P.3d 1024 (explaining that "legislative intent must be the touchstone of our inquiry" in multiple punishment analysis (internal quotation marks and citation omitted)). In assessing legislative intent, our Supreme Court has directed that "we first look to the language of the statute itself. If the statute does not clearly prescribe multiple punishments, then the rule of statutory construction established in *Blockburger v. United States*, 284 U.S. 299 . . . (1932), applies." *Swick*, 2012-NMSC-018, ¶ 11 (citation omitted). Here, the statutes do not expressly permit multiple convictions, *see* §§ 30-4-1, 30-9-1, so we turn to the *Blockburger* test.

**{16}** "Under *Blockburger*, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Swick*, 2012-NMSC-018, ¶ 12 (internal quotation marks and citation omitted). "If each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute." *Id.* ¶ 13. However, when a statute is "vague and unspecific" or "written with many

alternatives[,]" we apply a modified version of the *Blockburger* test. *Gutierrez*, 2011-NMSC-024, ¶ 48 (internal quotation marks and citation omitted). Under the modified *Blockburger* analysis, "we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *State v. Branch*, 2018-NMCA-031, ¶ 25, 417 P.3d 1141. "Accordingly, the application of *Blockburger* should not be so mechanical that it is enough for two statutes to have different elements." *Id.* (internal quotation marks and citation omitted). Thus, "instead of looking at the statute in the abstract, we look at the legal theory of the offense that is charged" when comparing the elements of the statute. *Gutierrez,* 2011-NMSC-024, ¶ 58 (internal quotation marks and citation omitted). "[W]e look to the charging documents and jury instructions to identify the specific criminal causes of action for which the defendant was convicted." *State v. Ramirez*, 2016-NMCA-072, ¶ 18, 387 P.3d 266; *see Branch*, 2018-NMCA-031, ¶ 25 (same).

**{17}** The elements of kidnapping, as explained in the statute and instructed to the jury, are "the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict death, physical injury or a sexual offense on the victim." Section 30-4-1(A)(4); UJI 14-403 NMRA (stating essential elements jury instruction for kidnapping).[1] Consequently, the kidnapping statute is unspecific, as there are many alternatives. We must therefore look to the State's theory of the case as it was presented to the jury to determine what the elements in the alternative mean. *See Gutierrez*, 2011-NMSC-024, ¶ 58. Hence, "instead of looking at the statute in the abstract, we look at the legal theory of the offense that is charged" when comparing the elements of the statute under a modified *Blockburger* analysis. *Id.* (internal quotation marks and citation omitted)." Thus, we apply the modified *Blockburger* analysis. In so doing, we look "beyond facial statutory language to the actual legal theory in [this] particular case by considering such resources as the evidence, the charging documents, and the jury instructions." *State v. Montoya*, 2013-NMSC-020, ¶ 49, 306 P.3d 426; *see Swick*, 2012-NMSC-018, ¶ 21 (examining charging document and jury instructions in modified *Blockburger* analysis).

**{18}** For kidnapping, the grand jury indictment, in pertinent part states: "[D]efendant did take, restrain, transport or confine [Victim] by force, intimidation or deception[.]" The tendered kidnapping jury instruction, states, in pertinent part: (1) "[D]efendant took, restrained, confined or transported [Victim] by force, intimidation or deception"; (2) "[D]efendant intended to hold [Victim] against [Victim]'s will to inflict death, physical injury or a sexual offense on [Victim.]" For the charge of enticement of a child, the grand jury indictment, in pertinent part, states "[D]efendant did entice, persuade or attempt to persuade [Victim] to enter a building, and [D]efendant intended to commit [c]riminal [s]exual [c]ontact of a [m]inor, a sexual offense, and [Victim] was less than sixteen years of age[.]" The tendered enticement jury instruction, states, in pertinent part: "[D]efendant enticed or persuaded [Victim] to enter a building[.]" Neither the charging document nor

---

1The kidnapping jury instruction also included that Defendant "h[e]ld [Victim] against [her] will[.]"

the jury instructions give us insight to the State's theory, and so we turn to its closing arguments for guidance. *See Gonzales*, 2019-NMCA-036, ¶ 24 (looking to the state's closing argument when the indictment and jury instructions provided no detail about the state's theory of the case); *see also State v. Silvas*, 2015-NMSC-006, ¶¶ 19-20, 343 P.3d 616 (turning to the state's closing argument as evidence of the state's legal theory in applying the modified *Blockburger* analysis).

**{19}** In closing, the State directed the jury to Defendant's statement to Victim that Defendant "want[ed] to show [her] something" as the basis for both kidnapping and enticement of a child. The State premised the kidnapping upon a theory of deception with intent to inflict a sexual offense. The prosecutor said in closing:

> [Defendant] said, "I want to show you something. Do you want to see something?" And this ten-year-old child with [Defendant's] help ends up going with him.
>
> So when you look at that, [D]efendant took [Victim] by force, intimidation or deception. And the deception was playing on the curiosity of a ten-year-old child to show her something that night.
>
> . . . .
>
> So is [Defendant] guilty of kidnapping? You betcha. And how do we know that? Because he took, restrained, confined or transported [Victim] by force, intimidation or deception. And, really, in this case is the deception, the "[c]ome with me, little girl. I've got something to show you."

Likewise, the State's theory for enticement of a child with intent to commit a sexual offense was based upon the same conduct and under the same theory. In closing, the prosecutor stated:

> The first element is [D]efendant enticed or persuaded [Victim] to enter a building. Well, we know that. "I want to show you something. Do you want to see something?"

The State's theory of both charges was identical: Defendant coaxed Victim to follow him by deceiving her with the notion he had something to show her with the intent to commit a sexual assault.

**{20}** Thus, although kidnapping by deception and enticement of a child, when viewed in the abstract, might require proof of an element that the other does not—for example, kidnapping requires unlawfully taking, restraining, transporting, or confining a person, and enticement of a child requires that the Victim must be a child under the age of sixteen—as applied in this case, the two offenses overlap. *See Silvas*, 2015-NMSC-006, ¶ 14 (explaining that the modified *Blockburger* analysis considers "not only whether each statute in the abstract requires proof of a fact that the other does not, but also

whether the statute, as applied by the [s]tate in a given case, overlaps with other criminal statutes so that the accused is being punished twice for the same offense" (alteration, emphasis, internal quotation marks, and citation omitted)). Here, as the State presented its case to the jury, Defendant is being punished twice for the same offense. Accordingly, we hold that in this case, Defendant's convictions for enticement of a child and kidnapping by deception violate his right to be free from double jeopardy, and consequently the conviction for enticement of a child—the lesser offense—must be vacated. *See State v. Padilla*, 2006-NMCA-107, ¶ 36, 140 N.M. 333, 142 P.3d 921 ("Where we conclude that double jeopardy has been violated, we vacate the lesser offense and retain the conviction for the greater offense."), *rev'd on other grounds by* 2008-NMSC-006, 143 N.M. 310, 176 P.3d 299. Because the statues do not survive a *Blockburger* analysis, we need not examine other indicia of legislative intent. *See Branch*, 2018-NMCA-031, ¶ 26 (stating that appellate courts examine "other indicia of legislative intent" only if the two statutes survive the *Blockburger* analysis).

## B.      First-Degree Kidnapping and CSCM

**{21}**    Defendant also contends that his convictions for first-degree kidnapping and CSCM violate his right to be free from double jeopardy because his conviction for CSCM was used to elevate Defendant's kidnapping charge from second to first-degree kidnapping. Defendant argues that the same conduct—the touching of Victim's breasts—was used to form the basis for his CSCM conviction and his first-degree kidnapping, and thereby, the CSCM conviction was subsumed in the first-degree kidnapping conviction.

### 1.      Unitary Conduct

**{22}**     "The proper analytical framework for determining unitary conduct is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Dominguez*, 2014-NMCA-064, ¶ 12, 327 P.3d 1092 (alteration, internal quotation marks, and citation omitted). "[T]he task is merely to determine whether the conduct for which there are multiple charges is . . . distinguishable." *Swafford*, 1991-NMSC-043, ¶ 28. "[W]e consider whether [the d]efendant's acts are separated by sufficient 'indicia of distinctness.' " *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61 (quoting *Swafford*, 1991-NMSC-043, ¶ 26). "The court may consider as indicia of distinctness the separation of time or physical distance between the illegal acts, the quality and nature of the individual acts, and the objectives and results of each act." *State v. Mora*, 2003-NMCA-072, ¶ 18, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citation omitted).

**{23}**    "Keeping in mind that legislative intent is our primary concern in deciding multiple punishment cases, we look first to the language of the statutes at issue." *State v. Frazier*, 2007-NMSC-032, ¶ 21, 142 N.M. 120, 164 P.3d 1. Section 30-4-1(B) governs whether a kidnapping conviction is a first or second-degree felony. It states:

Whoever commits kidnapping is guilty of a first[-]degree felony, except that he is guilty of a second[-]degree felony when he voluntarily frees the Victim in a safe place and does not *inflict physical injury or a sexual offense upon the victim*.

(Emphasis added.) Section 30-9-13(A) defines CSCM as "the unlawful and intentional touching of or applying force to the intimate parts of a minor." As charged in this case, the "intimate parts" were Victim's breasts.

{24}    Defendant argues that the conduct is unitary because the first-degree kidnapping was not complete unless and until the CSCM occurred, pointing to Section 30-4-1(B)'s requirement that first-degree kidnapping also requires that the jury make a finding that Defendant committed a "sexual offense."[2] The State responds that the conduct is not unitary because the kidnapping conviction was complete as soon as Defendant took or transported Victim through the window, *Dominguez*, 2014-NMCA-064, ¶ 10 ("The crime of kidnapping is complete when the defendant, with the requisite intent, restrains the victim, even though the restraint continues through the commission of a separate crime."); whereas the CSCM conviction was based on Defendant touching or applying force to Victim's breasts inside Defendant's bedroom. Moreover, the State argues that "[k]idnapping is by default a first[-]degree felony" and "the kidnapping statute merely allows a defendant to reduce his degree of kidnapping by not committing a sexual offense or physical harm and voluntarily freeing the Victim in a safe place." The State contends that Section 30-4-1(B) "creates a limited exception [to allow] a defendant to reduce or downgrade his kidnapping to a second[-]degree felony."

{25}    The State's argument misconstrues Section 30-4-1(B)'s requirement and our case law interpreting it. Our Supreme Court has explained that the requirements set out in Subsection (B) are elements that the state is required to prove to convict for first-degree kidnapping. *See State v. Gallegos*, 2009-NMSC-017, ¶ 16, 146 N.M. 88, 206 P.3d 993 ("The elements in Subsection (A), . . . if established, only support a charge of second-degree kidnapping. If the [s]tate wishes to convict an accused of first-degree kidnapping, it must also establish the elements in Subsection (B), contained in the special verdict form." (emphasis omitted)); *Dominguez*, 2014-NMCA-064, ¶¶ 16-17 ("It would also stand to reason, based on our kidnapping statute as written, that only if the jury found that [the d]efendant did not actually commit the intended sexual offense could his offense constitute second-degree kidnapping. . . . [W]e understand the district court's reluctance to adjudicate [the d]efendant guilty of first[]degree kidnapping in the absence of specific findings by the jury that [the d]efendant committed a sexual offense against [the v]ictim[.]"); *see also* UJI 14-403 comm. cmt. (explaining that to distinguish

---

[2]Defendant analogizes the present case to a felony murder statute case, *Frazier*, 2007-NMSC-032, to support his argument; however, the traditional double jeopardy analysis is more persuasive. *Cf. State v. Sotelo*, 2013-NMCA-028, ¶¶ 24-27, 296 P.3d 1232 (considering whether the defendant's double jeopardy rights were violated in his convictions for battery and first-degree kidnapping and holding that the kidnapping statute is not analogous to the felony murder statute, and the battery and kidnapping convictions in the case were not unitary as a matter of law).

first and second-degree kidnapping, "separate instructions were created for first and second-degree kidnapping that incorporate the distinguishing findings as essential elements").[3]

**{26}**　　The dissenting opinion argues that the focus of our analysis ought to be limited to the conduct required in the essential elements of the base crime, not the elements elevating such crime to a higher felony degree. Dissent Op. ¶ 53. We again emphasize that the requirements provided in Section 30-4-1(B) are elements that the State is required to prove to convict for first-degree kidnapping. *See Gallegos*, 2009-NMSC-017, ¶ 16; *Dominguez*, 2014-NMCA-064, ¶¶ 16-17. Moreover, our review of the case law confirms that our task in a double jeopardy analysis is to examine not only the conduct required for the base crime of the greater offense, but also that required to elevate the base crime to a higher felony degree. *See, e.g.*, *Dominguez*, 2014-NMCA-064, ¶¶ 5, 10 (analyzing a double jeopardy claim based not only on the elements of the base crime of criminal sexual penetration, but also on the elevating element that "the perpetrator is armed with a deadly weapon" (internal quotation marks and citation omitted)); *State v. Montoya*, 2011-NMCA-074, ¶ 35, 150 N.M. 415, 259 P.3d 820 (examining the conduct required for a conviction for second-degree criminal sexual penetration, which requires, in relevant part, that the criminal sexual penetration be perpetrated in the commission of any other felony). Therefore, here, as the State charged Defendant, the elements of first-degree kidnapping were not satisfied until a sexual offense was committed. There was only evidence presented of one sexual offense that occurred during the course of the kidnapping: the touching of Victim's breasts. The jury in a special verdict form found "unanimously . . . beyond a reasonable doubt that [D]efendant committed a sexual offense upon [Victim]." The conduct underlying Defendant's convictions for first-degree kidnapping and CSCM is unitary because there are no independent factual bases to support each offense. *See State v. Saiz*, 2008-NMSC-048, ¶ 30, 144 N.M. 663, 191 P.3d 521 (stating that the proper double jeopardy analysis is whether a "jury could have [reasonably] inferred independent factual bases for the charged offenses" (internal quotation marks and citation omitted)), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 n.1, 145 N.M. 357, 210 P.3d 783; *Swafford*, 1991-NMSC-043, ¶ 27 (whether conduct is unitary "depends to a large degree on the elements of the charged offenses and the facts presented at trial").

**{27}**　　Nevertheless, the dissenting opinion proposes that there are sufficient indicia of distinctness between Defendant's conduct during the kidnapping and his conduct during the CSCM. Dissent Op. ¶¶ 58, 59. Although the dissenting opinion's argument to this effect is limited to the context of the conduct required for *the base crime of kidnapping*— a premise we expressly reject in light of the circumstances of the case at bar—we

---

[3]The statute requires a defendant to not "inflict death, physical injury, or sexual offense on the victim" *and* "voluntarily free[] the victim in a safe place" to be convicted of second-degree kidnapping. Section 30-4-1(A)(4), (B); *see Dominguez*, 2014-NMCA-064, ¶ 16 n.1. Neither party argues whether Defendant voluntarily freed Victim in a safe place, but we do note that Victim was safely reunited with her mother when Defendant took down his makeshift door to let Victim leave his bedroom and go to her mother across the street.

pause to acknowledge that punishment for both the predicate and compound offenses is permissible when the State bases its theory for each offense through *non-unitary conduct*. *See Dominguez*, 2014-NMCA-064, ¶ 10 (concluding that regardless of whether the defendant uses the same type of force to restrain the victim during a kidnapping and during a criminal sexual penetration, such conduct is not unitary if there are "independent and factually distinct bases for [those] crimes"); *Montoya*, 2011-NMCA-074, ¶ 43 (explaining that because the jury was instructed on a theory based on unitary conduct to establish the predicate and compound offenses, punishment for both offenses violated double jeopardy); *State v. Ramos*, 1993-NMCA-072, ¶ 27, 115 N.M. 718, 858 P.2d 94 ("Similar statutory provisions sharing certain elements may support separate convictions and punishments where examination of the facts presented at trial establishes that the jury reasonably could have inferred *independent factual bases* for the charged offenses." (emphasis added) (alterations, internal quotation marks, and citation omitted)), *holding modified on other grounds by State v. Gomez*, 1997-NMSC-006, ¶ 32, 122 N.M. 777, 932 P.2d 1. As the facts presented at trial demonstrate that the first-degree kidnapping and CSCM charges were based on the *same* conduct, we are bound to conclude that the conduct underlying both offenses is unitary. We therefore turn to the next prong: legislative intent.

## 2.     Legislative Intent

**{28}**    Because the two statutes do not expressly permit multiple convictions, *see* §§ 30-4-1, 30-9-13, we consider whether the Legislature intended multiple punishments under such circumstances. *See Swick,* 2012-NMSC-018, ¶ 11. Once again, the kidnapping statute has multiple alternatives, and thus we apply the modified *Blockburger* analysis, as we did previously. *Gutierrez*, 2012-NMCA-095, ¶ 14 (explaining that the modified *Blockburger* approach "applies when one of the statutes at issue is written with many alternatives, or is vague or unspecific").

**{29}**    Again, under modified the *Blockburger* analysis, we look to the State's trial theory "to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *Branch*, 2018-NMCA-031, ¶ 25. "[W]e look to the charging documents and jury instructions to identify the specific criminal causes of action for which the defendant was convicted." *Ramirez*, 2016-NMCA-072, ¶ 18. We will also look to the State's closing argument as evidence of its trial theory. *Gonzales*, 2019-NMCA-036, ¶ 24.

**{30}**    The grand jury indictment charged Defendant with first-degree kidnapping, alleging Defendant "did take, restrain, transport or confine [Victim] by force, intimidation or deception, intending to inflict a sexual offense on [Victim] and *inflicted a sexual offense on* [*Victim*], a first[-]degree felony[.]" (emphasis added). It charged Defendant with CSCM, alleging he "did unlawfully and intentionally touch or apply force to the intimate parts of [Victim], to wit: her breasts[.]" In addition to the elements of kidnapping as discussed above, the jury was instructed that

[i]f you find [D]efendant guilty of kidnapping as charged in Count 1, then you must determine whether a sexual offense was committed. You must complete the special forms to indicate your findings.

For you to make a finding of "yes,"[] the [S]tate must prove to your satisfaction beyond a reasonable doubt that [D]efendant committed a sexual offense upon [Victim].

The jury answered "Yes" on the special interrogatory form, which asked "[d]o you unanimously find beyond a reasonable doubt that [D]efendant committed a sexual offense upon [Victim]?"

**{31}** In the State's closing argument, while discussing the CSCM, the State explained that the basis of the charge was Defendant's "flat hand over [Victim's] breasts." Although the State's closing argument does not mention the special verdict form or Subsection (B)'s requirement of a finding of a sexual offense upon Victim, the State did argue that Subsection (A)(4)'s intent requirement was to inflict a sexual offense. The State explained:

[Defendant's] motives, his intent, his reason for taking [Victim] to [Defendant's] room was none other than to make sexual advances on [Victim] and to sexually contact her, to touch her. And that's exactly what [Defendant] did when he got [Victim] there, and that you know from her testimony.

Our review of the record reveals no other sexual contact, or "sexual offense," other than the one touching of Victim's breasts.

**{32}** Thus, although first-degree kidnapping and CSCM, when viewed in the abstract, might require proof of an element that the other does not—as applied in this case, it does not. Again, as the State's case was presented to the jury, Defendant is being punished twice for the same offense. Accordingly, we hold that in this case, Defendant's convictions for CSCM and first-degree kidnapping violate his right to be free from double jeopardy, therefore the lesser offense of CSCM must be vacated.

### 3. Vacation of Defendant's CSCM Conviction Results in the Entry of a Conviction of the Lesser Included Offense of Battery

**{33}** Because we vacate Defendant's CSCM conviction, we turn to whether we should reverse and remand for the lesser included offense of battery, upon which the jury was instructed. Based on the jury's verdict, we determine that had the jury not convicted Defendant of CSCM, it would have convicted Defendant of battery in violation of NMSA 1978, Section 30-3-4 (1963), a lesser included offense and one on which the jury was also instructed. *See State v. Haynie*, 1994-NMSC-001, ¶¶ 3-4, 116 N.M. 746, 867 P.2d 416 (holding that an appellate court has authority to remand a case for entry of judgment on a lesser included offense when the evidence fails to prove the higher

offense, the jury was instructed on the lesser included offense, the elements of the lesser included offense were necessarily proven to the jury, and the interests of justice are served in doing so). Defendant concedes that, without the CSCM conviction, a battery conviction should be entered on remand. Unlike the CSCM instruction's requirement of touching or applying force to Victim's breasts, battery only requires that Defendant intentionally touched or applied force to Victim in a rude, insolent, or angry matter. *See* § 30-3-4 ("Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner."). There was ample, unrefuted evidence that Defendant touched Victim on her legs, stomach, and chest in a rude, insolent, or angry manner while asking her if she wanted to have sex and telling her she cannot leave his bedroom. A battery conviction here does not raise the same double jeopardy concerns with first-degree kidnapping because the double jeopardy violation stemmed from the unitary "sexual offense," an element not required in the battery charge. *Cf. Sotelo*, 2013-NMCA-028, ¶¶ 20-27 (concluding that the defendant's conviction for first-degree kidnapping and battery did not violate the constitutional probation against double jeopardy). Because the jury was instructed on the lesser included offense of battery, we vacate Defendant's conviction of CSCM and reverse and remand with instructions for the district court to enter a conviction of battery. *See State v. Segura*, 2002-NMCA-044, ¶¶ 17-18, 132 N.M. 114, 45 P.3d 54 (remanding for entry of judgment on a lesser included offense of attempted CSCM when evidence failed to prove CSCM by a person in a position of authority).

**CONCLUSION**

**{34}**    Having concluded Defendant's right to be free from double jeopardy was violated, we remand to the district court to vacate the lesser included offenses of enticement of a child and CSCM, enter a conviction for the lesser included offense of battery, and to resentence Defendant accordingly.

**{35}    IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge Pro Tempore**

**I CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge (dissenting).**

**MEDINA, Judge (dissenting).**

**{36}**    For the following reasons, I respectfully dissent in this case and would hold that Defendant's convictions for first-degree kidnapping and enticement of a child or CSCM do not violate double jeopardy.

**Kidnapping and Enticement of a Minor**

**{37}** In regard to the majority's double jeopardy analysis of Defendant's convictions for kidnapping and enticement of a child, I believe this analysis is incomplete and arrives at an erroneous result. In order to fully explain my reasoning, it is useful to first discuss our double jeopardy inquiry and the role of the modified *Blockburger* analysis.

**{38}** In a double-description case—such as here—we apply the two-part test set forth in *Swafford*, 1991-NMSC-043, ¶ 25. We first ask "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." *Id.* "If it is unitary, we [then] consider whether it was the Legislature's intent to punish the two crimes separately." *Swick*, 2012-NMSC-018, ¶ 11. The touchstone of our analysis under this second step is legislative intent. *See id.* ¶ 24 ("The Legislature is always free to express its intent to punish the same conduct under more than one statute."); *Swafford*, 1991-NMSC-043, ¶ 11 (noting that the United States Supreme Court "repeatedly has stated that the question of whether punishments are unconstitutionally multiple depends on whether the [L]egislature has authorized multiple punishment").

**{39}** "To determine legislative intent, we look first to the language of the statute." *Silvas*, 2015-NMSC-006, ¶ 11. "Absent a clear expression of legislative intent, a court first must apply the *Blockburger* test to the elements of each statute." *Swafford*, 1991-NMSC-043, ¶ 30. "Under *Blockburger*, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Swick*, 2012-NMSC-018, ¶ 12 (internal quotation marks and citation omitted). As our Supreme Court has explained,

> The rationale underlying the *Blockburger* test is that if each statute requires an element of proof not required by the other, it may be inferred that the [L]egislature intended to authorize separate application of each statute. Conversely, if proving violation of one statute always proves a violation of another (one statute is a lesser included offense of another, i.e., it shares all of its elements with another), then it would appear the [L]egislature was creating alternative bases for prosecution, but only a single offense.

*Swafford*, 1991-NMSC-043, ¶ 12.

**{40}** In *Gutierrez*, our Supreme Court adopted the modified *Blockburger* analysis for double jeopardy claims involving statutes that are "vague and unspecific," or "written with many alternatives." 2011-NMSC-024, ¶ 48 (internal quotation marks and citation omitted). "In effect, this modified approach recognizes that comparing in the abstract ambiguous facial statutory elements fails to provide requisite guidance to a court in determining legislative intent." *State v. Luna*, 2018-NMCA-025, ¶ 10, ___ P.3d ___, *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36896, Mar. 16, 2018). Thus, under the modified *Blockburger* analysis, our courts look beyond the "facial statutory language," *Montoya*, 2013-NMSC-020, ¶ 49, and "evaluate legislative intent by considering the [s]tate's legal theory independent of the particular facts of the case." *Swick*, 2012-NMSC-018, ¶ 21.

**{41}**  In order to determine the actual legal theory in a particular case, we consider "such resources as the evidence, the charging documents, and the jury instructions." *Montoya*, 2013-NMSC-020, ¶ 49. "Where neither the indictment nor the jury instructions shed any light on the state's trial theory, and/or to confirm our understanding of the state's theory, we may also look to the state's closing argument for evidence of the specific factual basis supporting its theory." *Luna*, 2018-NMCA-025, ¶ 10 (alterations, internal quotation marks, and citation omitted). "By doing this, we may properly identify the appropriate 'provisions' for comparison that are at the heart of the *Blockburger* test." *Id.* Thus, both the traditional and modified *Blockburger* approaches require comparing the applicable criminal provisions to determine "whether each provision requires proof of a fact which the other does not." *Swick*, 2012-NMSC-018, ¶ 12 (internal quotation marks and citation omitted).

**{42}**  "If that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford*, 1991-NMSC-043, ¶ 30. On the other hand, "[i]f one statute requires proof of a fact that the other does not, then the Legislature is presumed to have intended a separate punishment for each statute without offending principles of double jeopardy." *Silvas*, 2015-NMSC-006, ¶ 12. "That presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent[,]" *id.* (internal quotation marks and citation omitted), which "may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors." *Swick*, 2012-NMSC-018, ¶ 13 (internal quotation marks and citation omitted). Finally, "[i]f after examining the relevant indicia the legislative intent remains ambiguous, the rule of lenity requires us to presume that the Legislature did not intend multiple punishments for the same conduct." *Id.*

**{43}**  I agree with the majority that Defendant's convictions for kidnapping and enticement of a child were premised upon unitary conduct. Maj. Op. ¶ 13. I also agree that the modified *Blockburger* analysis is warranted because the kidnapping statute is written with many alternatives, *see* § 30-4-1; *Gutierrez*, 2011-NMSC-024, ¶ 48; Maj. Op. ¶ 17, and that such analysis demonstrates that the State premised the kidnapping charge on Defendant's intent to hold Victim against her will to inflict a sexual offense on Victim, and that Defendant effectuated this goal through the use of deception by telling Victim "I want to show you something." Maj. Op. ¶ 19. I further note that the modified *Blockburger* analysis is warranted for analysis of the enticement of a child statute because it is unspecific in the sense that it does not specify the criminal sexual act for which Defendant had the intent to commit, *see* § 30-9-1(A) ("Enticement of child consists of . . . enticing, persuading or attempting to persuade a child under the age of sixteen years to enter any vehicle, building, room or secluded place with intent to commit an act which would constitute a crime under Article 9 of the Criminal Code[.]"), although the jury instructions make clear that the State premised this charge on the theory that Defendant intended to commit the crime of CSCM.

**{44}** However, I disagree with the majority's conclusion that Defendant's convictions for kidnapping by deception and enticement of a minor violate double jeopardy simply because they were based upon the same conduct and under the same theory. Maj. Op. ¶ 20. In arriving at this conclusion, the majority appears to conflate our inquiry under the first step of our double jeopardy analysis with our inquiry under the second step. The purpose of the modified *Blockburger* analysis is not to determine whether the State based its theory for the two charges upon the same conduct. Rather, the purpose is to identify the appropriate provision for comparison under the traditional *Blockburger* test. *See Luna*, 2018-NMCA-025, ¶ 10. Indeed, the majority recognized this in its general discussion of the modified *Blockburger* analysis, stating, "Thus, 'instead of looking at the statute in the abstract, we look at the legal theory of the offense that is charged' *when comparing the elements of the statute*." Maj. Op. ¶ 16 (emphasis added) (quoting *Gutierrez*, 2011-NMSC-024, ¶ 58).

**{45}** Despite recognizing this and setting forth the elements of kidnapping and enticement of a child, the majority fails to actually compare the identified elements of kidnapping to enticement of a child in order to determine "whether each provision requires proof of a fact which the other does not." *Swick*, 2012-NMSC-018, ¶ 12 (internal quotation marks and citation omitted); Maj. Op. ¶¶ 17-20. When properly continuing the double jeopardy analysis, it becomes apparent that the Legislature intended to permit multiple punishments for kidnapping by deception and enticement of a child.

**{46}** Consistent with UJI 14-403, the jury was instructed to find Defendant guilty of kidnapping if they determined, in relevant part, that: (1) "[D]efendant took, restrained, confined or transported [Victim] by force, intimidation or deception" and (2) "[D]efendant intended to hold [Victim] against [Victim]'s will to inflict death, physical injury or a sexual offense on [Victim.]" Consistent with UJI 14-971 NMRA, the jury was instructed to find Defendant guilty of enticement of a child if they determined, in relevant part, that: (1) "[D]efendant enticed or persuaded [Victim] to enter a building"; (2) "[D]efendant intended to commit the crime or crimes of sexual contact"; and (3) "[Victim] was less than [sixteen] years old." Comparing these elements to the identified provision of Defendant's kidnapping charge, it is clear that each charge requires proof of a fact which the other does not. In order to find Defendant guilty of kidnapping by deception, the jury was required to find, inter alia, that Defendant intended to hold Victim *against her will*, a fact which was not required to be proven for the enticement charge. Likewise, in order to find Defendant guilty of enticement of a child, the jury was required to find, inter alia, that Victim was less than sixteen years of age, a fact which was not required for the kidnapping charge. Therefore, "the Legislature is presumed to have intended a separate punishment for each statute without offending principles of double jeopardy." *Silvas*, 2015-NMSC-006, ¶ 12.

**{47}** As noted earlier, this presumption may be overcome by other indicia of legislative intent, which "may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute;

and examining other relevant factors." *Swick*, 2012-NMSC-018, ¶ 13 (internal quotation marks and citation omitted). Turning to the evils addressed by each statute, the Legislature appears to have intended the statutes to protect against different evils. On one hand, the offense of kidnapping, as charged in this case, seeks to address unlawful restrictions on *any* victim's physical liberty with intent to force them into sexual acts. *See State v. Telles*, 2019-NMCA-039, ¶ 29, 446 P.3d 1194 (stating that the kidnapping statute is "intended to prevent individuals from harming others or depriving others of their freedom with the intent to force them to do something against their will"), *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37652, May 15, 2019). On the other hand, enticement is designed to protect a specific class of vulnerable persons (i.e., children) from being persuaded into entering a secluded space in which they may be taken advantage of sexually. Thus, this indication of legislative intent dictates in favor of allowing multiple punishments. *See Swafford*, 1991-NMSC-043, ¶ 32 ("Statutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments.").

**{48}** Furthermore, "the statutes are [not] usually violated together." *Swick*, 2012-NMSC-018, ¶ 13 (internal quotation marks and citation omitted). Many, if not most, kidnappings are committed by force—not deception. In such scenarios, the enticement of a child statute would not be implicated because the defendant would be relying on force and not enticement or persuasion. *See* § 30-9-1(A) (stating that enticement of child consists of "*enticing, persuading or attempting to persuade* a child" (emphasis added)). Additionally, many kidnappings are not sexually motivated and, therefore, do not implicate the enticement of a child statute, which also dictates in favor of allowing multiple punishments. *See id.* (providing that the defendant must have "intent to commit [a sexual offense]").

**{49}** Admittedly, the differing quantum of punishments for the respective crimes suggests that the Legislature may not have intended to punish the two crimes separately: Defendant's conviction for kidnapping is a first-degree felony punishable by up to eighteen years in prison, *see* § 30-4-1; NMSA 1978, § 31-18-15(A)(3) (2016, amended 2019), whereas Defendant's conviction for enticement is misdemeanor punishable by up to 364 days. *See* § 30-9-1; *Swafford*, 1991-NMSC-043, ¶ 33 ("Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the [L]egislature did not intend punishment under both statutes."). *But see Swick*, 2012-NMSC-018, ¶ 9 n.1 (noting that New Mexico courts have "used the quantum of punishment to support the proposition that the Legislature did not intend to punish the two crimes separately, *both when the amount of punishment is the same and when the amount differs*" (emphasis added)). However, "this Court and our Supreme Court have previously noted that a difference in the quantum of punishment alone is insufficient to overcome other indicia of legislative intent." *State v. Caldwell*, 2008-NMCA-049, ¶ 19, 143 N.M. 792, 182 P.3d 775. Accordingly, I would hold that Defendant's convictions for kidnapping and enticement of a child do not violate double jeopardy.

**Kidnapping and CSCM**

**{50}** Turning to Defendant's convictions for first-degree kidnapping and CSCM, the majority concludes that Defendant's conduct underlying his convictions for first-degree kidnapping and CSCM are unitary because Defendant could not be convicted of first-degree kidnapping (in this case) without committing the CSCM. *See* Maj. Op. ¶ 26; § 30-4-1(B) ("Whoever commits kidnapping is guilty of a first[-]degree felony, except that he is guilty of a second-degree felony when he voluntarily frees the victim in a safe place and does not inflict physical injury or a sexual offense upon the victim."); *Gallegos*, 2009-NMSC-017, ¶ 16 (stating in dicta that "[t]he elements in Subsection (A), . . . if established, only support a charge of second-degree kidnapping. If the [s]tate wishes to convict an accused of first-degree kidnapping, it must also establish the elements in Subsection (B), contained in the special verdict form." (emphasis and citation omitted)). I respectfully disagree with this approach.

**{51}** That the Legislature has deemed the crime of kidnapping deserving of greater punishment when the perpetrator also commits a sexual offense on the victim does not mean that the conduct underlying both offenses is unitary by definition, even in cases— such as here—where the only conduct elevating the kidnapping charge to a first-degree felony offense is the defendant's commission of another sexual offense for which he was also convicted.[4] Under the majority's approach, it would never be permissible to allow convictions for both predicate and compound offenses because the predicate offense would always be subsumed within the other offense as a matter of law. This runs contrary to precedent. *See State v. McGuire*, 1990-NMSC-067, ¶ 14, 110 N.M. 304, 795 P.2d 996 ("Nor does the fact that the kidnapping charge was used to raise the criminal sexual penetration to a second-degree felony pose a double jeopardy problem in this case. Convictions normally are allowed for both predicate and compound offenses, and our courts have held that criminal sexual penetration statutes and kidnapping statutes protect different social norms."); *State v. Corneau*, 1989-NMCA-040, ¶ 11, 109 N.M. 81, 781 P.2d 1159 (holding that false imprisonment could be used to raise criminal sexual penetration to a second-degree felony when evidence supported a finding of false imprisonment separate from the false imprisonment necessarily involved in almost every act of criminal sexual penetration).

**{52}** Perhaps most concerning is the result of the majority's approach in terms of punishment. Under the majority's line of analysis, a defendant who kidnaps and subsequently inflicts even the slightest physical injury on the victim or a defendant who

---

4Although the Supreme Court has indicated this is the case in the context of our felony murder statute, *see Frazier*, 2007-NMSC-032, ¶¶ 21-35 (analyzing whether murder and the predicate felony are actually greater and lesser included offenses in every felony murder and concluding that the language of the felony murder statute "renders the conduct supporting the felony murder and the underlying predicate felony unitary by definition"), this Court has specifically rejected importing *Frazier's* analysis to our kidnapping statute. *See Sotelo*, 2013-NMCA-028, ¶¶ 21-27 (rejecting the defendant's argument "that the kidnapping statute functions like the felony murder statute" because, among other things, "the fact that the underlying felony increases punishment for a killing to the same level as an intentional killing even when there is no premeditation or a depraved mind" was critical to *Frazier's* analysis, whereas punishment under the kidnapping statute did not create the same result (internal quotation marks and citation omitted)).

simply does not voluntarily release the victim in a safe place would receive the exact same punishment as a defendant who kidnaps and violently rapes his victim: Each would be guilty of only a single count of first-degree kidnapping. I do not believe this is what the Legislature intended in enacting Section 30-4-1. *See Frazier*, 2007-NMSC-032, ¶ 19 (stating that both prongs of our double jeopardy analysis are guided by legislative intent). Rather, I believe the Legislature intended to punish separately the sexual offense that the defendant commits—even if that is the only conduct relied on to elevate the crime of kidnapping to a first-degree felony under Section 30-4-1(B).

**{53}** For these reasons, I believe that the proper focus of our unitary conduct analysis for kidnapping should be on the conduct used to accomplish the kidnapping itself, not the conduct used to elevate the kidnapping to a first-degree felony offense (i.e., the commission of a sexual offense). In other words, if there is sufficient indicia of distinctness between the conduct used to accomplish the kidnapping—in this case, the "unlawful taking, restraining, transporting or confining of [Victim], by . . . deception, with intent . . . to inflict . . . a sexual offense[,]" *see* § 30-4-1(A)(4)—and the force used to accomplish the sexual offense, Defendant's conduct underlying the two crimes should not be considered unitary for purposes of our double jeopardy analysis. *See State v. Simmons*, 2018-NMCA-015, ¶ 26, 409 P.3d 1030 ("In specifically analyzing whether the conduct underlying kidnapping and [sexual offense] convictions is unitary, this Court has held that unitary conduct occurs when the prosecution bases its theory of kidnapping on the same force used to commit [the sexual offense.]" (alterations, internal quotation marks, and citation omitted)).

**{54}** This is consistent with our case law. For example, in *Ramos*, we rejected the defendant's argument that he was subjected to multiple punishments because the state used his kidnapping conviction to raise his CSP charge from a third-degree to a second-degree felony, as well as an independent felony. 1993-NMCA-072, ¶ 27. In *Ramos*, we noted that "[s]imilar statutory provisions sharing certain elements may support separate convictions and punishments where examination of the facts presented at trial establishes that the jury reasonably could have inferred independent factual bases for the charged offenses." 1993-NMCA-072, ¶ 27 (alteration, internal quotation marks, and citation omitted). Given the victim's testimony that "after [the d]efendant completed the drive into the desert against her will, during which time [the d]efendant restricted her movements, [the d]efendant tried to remove [the victim]'s clothes and told her that he was going to have sex with her[,] . . . the jury could have inferred from facts other than the CSP itself that [the d]efendant intended to hold the victim against her will from the moment of the abduction." *Id.* ¶ 28.

**{55}** In *Dominguez*, the state charged the defendant with second-degree criminal sexual penetration (CSP-II) and first-degree kidnapping on the basis that the defendant inflicted a sexual offense on the victim. 2014-NMCA-064, ¶ 5. Although the jury convicted the defendant of both counts, the district court reduced his conviction to a second-degree felony because the jury had not been given the then-current special verdict form containing specific interrogatories asking whether the jury found that the defendant committed a sexual offense upon the victim. *Id.* ¶¶ 13-14. On appeal, the

defendant argued that his convictions violated double jeopardy because "the force or restraint associated with the CSP II [was] the same force or restraint associated with kidnapping." *Dominguez*, 2014-NMCA-064, ¶ 5. We concluded that the defendant's conduct was not unitary because he had completed the kidnapping before he moved the victim to another bedroom, where he committed the CSP. *Id.* ¶ 10. Importantly, we further held that the district court erred in reducing the defendant's kidnapping conviction to a second-degree—despite the absence of the special verdict form—because "the jury unquestionably found beyond a reasonable doubt that [the d]efendant committed a sexual offense against [the v]ictim when it returned a guilty verdict on CSP II." *Id.* ¶ 19. Thus, we concluded the defendant was guilty of both first-degree kidnapping and the underlying sexual offense. *Id.* ¶ 29.

**{56}** Similarly, in *Montoya*, we considered whether the defendant's right to be free from double jeopardy was violated when he was convicted of both CSP II (commission of a felony) and the predicate felony of either aggravated burglary or kidnapping. 2011-NMCA-074, ¶ 28. After holding that the conduct underlying the CSP II conviction and the aggravated burglary conviction was not unitary, *id.* ¶¶ 33-34, we turned to the defendant's kidnapping conviction. *Id.* ¶ 35. We began our analysis by explaining, "[U]nitary conduct occurs when the state bases its theory of kidnap[p]ing on the same force used to commit CSP II (commission of a felony) even though there were alternative ways to charge the crime." *Id.* ¶ 37. We noted that the conduct underlying the CSP II and kidnapping convictions could be unitary depending on the jury's basis for when the kidnapping occurred, which was unclear from the record. *Id.* ¶¶ 39-40. "Because one of the alternative bases for kidnap[p]ing was the force of restraining [the v]ictim and because that force was the same force used to commit CSP, we conclude[d] that the conduct underlying both of the convictions was unitary." *Id.* ¶ 39.

**{57}** In evaluating legislative intent under the second prong of our double jeopardy analysis, we examined the jury instructions and determined that the CSP II instruction "required the jury to find that [the d]efendant caused [the v]ictim to engage in sexual intercourse during the commission of kidnap[p]ing or aggravated burglary." *Id.* ¶ 41. Accordingly, we concluded that the kidnapping conviction was subsumed within the CSP II conviction because the latter required proof of all of the elements of the former. *Id.* ¶ 42. However, we noted that "[t]his holding d[id] not mean that a defendant could never be punished for both kidnap[p]ing and CSP II (commission of a felony)." *Id.* ¶ 43. "Had the jury in this case been instructed only on a theory based on non-unitary conduct to establish kidnap[p]ing[,]" we observed "convictions for both CSP II (commission of a felony) and kidnap[p]ing may have been upheld." *Id.*

**{58}** In this case, the record clearly indicates that the State did not base its theory of kidnapping on the same force used to commit the CSCM. In closing, the State made clear that it based its theory of kidnapping on Defendant's use of deception and not the same force used to commit the CSCM, stating,

> So is [Defendant] guilty of kidnapping? You betcha. And how do we know
> that? Because [Defendant] took, restrained, confined or transported

[Victim] by force, intimidation or deception. And, really, in this case is the deception, the "[c]ome with me, little girl. I've got something to show you."

And there was substantial evidence supporting this theory. Victim testified that Defendant grabbed her by the hood of her jacket, pulled her outside onto the windowsill, and put his arm around her mouth. He then told her that he wanted to show her something, which peeked Victim's curiosity, prompting her to follow Defendant across the street as Defendant held her hand "really tight[ly.]" At that point in time, the kidnapping by deception was complete, although continuing. *See Dominguez*, 2014-NMCA-064, ¶ 10 ("The crime of kidnapping is complete when the defendant, with the requisite intent, restrains the victim, even though the restraint continues through the commission of a separate crime."); *see also State v. Jacobs*, 2000-NMSC-026, ¶ 25, 129 N.M. 448, 10 P.3d 127 (holding that "[t]he jury could have found that [the d]efendant kidnapped the victim by deception when he initially offered her a ride home from the mall with another intent in mind").

**{59}** It was not until Defendant brought Victim into his bedroom, propped a box spring over the entryway, and forced Victim to sit on his bed, despite her protestations, that Defendant committed the CSCM by running his hand over Victim's breasts. Accordingly, I would hold that Defendant's conduct underlying the kidnapping and CSCM was not unitary, and therefore, his convictions for both crimes do not violate double jeopardy. *See State v. Bernal*, 2006-NMSC-050, ¶ 9, 140 N.M. 644, 146 P.3d 289 ("If the conduct is not unitary, then the inquiry is at an end and there is no double jeopardy violation."); *Montoya*, 2011-NMCA-074, ¶ 31 ("Sufficient indicia of distinctness exist when one crime is completed before another, and also when the conviction is supported by at least two distinct acts or forces, one which completes the first crime and another which is used in conjunction with the subsequent crime." (internal quotation marks and citation omitted)).

## CONCLUSION

**{60}** To summarize, I would hold that (1) Defendant's convictions for first-degree kidnapping and enticement of a child do not violate double jeopardy because the Legislature intended to punish the two crimes separately, and (2) Defendant's convictions for first-degree kidnapping and CSCM do not violate double jeopardy because they were based on non-unitary conduct.

**JACQUELINE R. MEDINA, Judge**